IN RE ESTATE OF WILLIAM R. DALBEY.
MARY E. COMBS, NEE MARY E. CALKINS, APPELLEE, V. JANE MCINTIRE ET AL., ADMINISTRATRIX AND ADMINISTRATOR, APPELLANTS.
8 N. W. (2d) 512

FILED MARCH 5, 1943. No. 31526.

*McKenzie & Dugan,* for appellant.

*George C. Pardee* and *H. E. Kuppinger, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

This appeal by the administrators with the will annexed of the estate of William R. Dalbey, deceased, appellants herein, arises out of a claim filed by Mary E. Combs, nee Mary E. Calkins, appellee herein, against said estate. After the claim was allowed by the county court an appeal was taken to the district court for Douglas county and, jury being waived, judgment was entered thereon for the claimant. The administrators have appealed to this court and the claimant has cross-appealed.

The facts disclose that on and prior to February 14, 1928, the claimant, who will be referred to herein as appellee, was living with her mother, Leanna Keirns, at 138 North Thirty-first avenue in Omaha, Nebraska; that William R. Dalbey, who was the same person as W. R. Dalbey, was residing in the home as a roomer. Appellee, whose name at that time was Mary E. Calkins and who was 28 years of age, was working for the Travelers Health Insurance Company as a typist. From her earnings she had saved a sufficient amount and deposited same in the Conservative Savings and Loan Association of Omaha so that on February 14, 1928, she was able to withdraw from her funds therein the sum of $500 in the form of a check payable to herself. This check she indorsed and delivered to W. R. Dalbey who cashed the same on February 16, 1928, by indorsing his name thereon and received the funds therefrom. On February 20, 1928, W. R. Dalbey in consideration thereof executed and delivered to Leanna Keirns for appellee, together with two insurance policies therein described, the following instrument which will be referred to herein as exhibit 2:

"February 20, 1928.

"For and in consideration of the sum of $500.00 (five hundred dollars), paid to me, I hereby assign to Mary E. Calkins, 138 N. 31st Ave., Omaha, Nebr., all my rights and interests in two life insurance policies, No. 800407 and No. 645897, issued to me by The Prudential Life Insurance Co. of America, said policies to be paid to Mary E. Calkins at my death.

"W. R. Dalbey

"These two policies are for $500.00 each, both fully matured, upon which the sum of approximately $400.00 has been borrowed by me at the rate of 5% interest, which interest I agree to pay when due. These two policies are payable to my estate at death and now so appear on the books of the company.

"I reserve the right to redeem these policies upon the payment of $500.00 to Mary E. Calkins, with interest at the rate of 6%.

"W. R. Dalbey"

This instrument was delivered to appellee by her mother after Dalbey died, although appellee had known thereof and of its contents since shortly after it was originally delivered to her mother. The parties had all known each other for some considerable period of time and were on friendly terms. Mrs. Keirns had known Dalbey for about 35 years prior to his death on January 24, 1941, and he had been staying at the Keirns home for about 24 or 25 years. Prior to 1928 the appellee had likewise been living in her mother's home and had known Dalbey since about 1916. Dalbey was, during these years, operating a music company which specialized in his oil for trombones and other musical instruments. After Dalbey's death the policies referred to in exhibit 2 were in the home of Leanna Keirns and by the county court directed deposited with the court pending the determination as to who was entitled to receive the proceeds thereof. However, as to who had possession and control thereof during the period from their delivery to Mrs. Keirns at the time exhibit 2 was delivered up to Mr. Dal-

bey's death is uncertain and very much in dispute. The policies which were paid up on February 20, 1928, remained in force, subject to the loans thereon, until the death of W. R. Dalbey and the appellants collected thereon the sum of $581.67 on March 10, 1941, for which amount the district court entered judgment with interest at 6 per cent. from that date.

The first matter for consideration is appellants' motion objecting to this court considering the cross-appeal of the appellee as set out in her brief for the reason that notice thereof was not filed as required by rule 7-a of this court and section 20-1912, Comp. St. Supp. 1941. In *Ternes v. Watke*, 134 Neb. 798, 279 N. W. 718, under paragraph 2, rule 7-a of this court, we held: "An appellee may take cross-appeal by filing with the clerk of this court, on or before the day originally fixed for the filing of appellant's brief, a præcipe on cross-appeal." However, since then the legislature amended section 20-1912, Comp. St. 1929, by Legislative Bill No. 182 of the 1941 session (Laws 1941, ch. 32, sec. 1) and we have changed the rules so that a cross-appeal may be raised in the appellee's brief, rule 7-d which reads as follows: "The filing of an appeal shall vest in any appellee the right to a cross-appeal, which need only to be asserted by him in his briefs filed in this court." This rule being in force when this appeal was filed, the motion is overruled.

The contentions of the appellants on this appeal are: First, the claim of the appellee is barred by the statute of limitations; and, second, that neither a pledge was ever made of the policies themselves nor did the appellees have possession thereof as security for the money advanced.

For a construction of exhibit 2, appellee cites the rule announced in *Flory v. Supreme Tribe of Ben Hur*, 98 Neb. 160, 152 N. W. 295, wherein we held: "Language used in a contract prepared by one of the parties thereto, which is susceptible to more than one construction, should receive such a construction as the party preparing the same at the time supposed the other party would give to it, or such a

construction as the other party would be fairly justified in giving to it." A careful examination thereof does not require the application of this rule of construction. The first paragraph clearly sets forth an assignment of policies No. 800407 and No. 645897, issued to W. R. Dalbey by the Prudential Insurance Company of America, to Mary E. Calkins in consideration of $500 and to be payable to her at his death. The second paragraph describes the policies, the loans thereon, what the maker agreed to do in regard to the loans, and that the policies are payable to his estate. These two paragraphs describe the two policies sufficiently to identify them and then assign them to Mary E. Calkins, subject to the loans thereon, for the $500 she paid him out of her savings account in a building and loan association and then direct that the proceeds thereof be paid to her at his death. The maker adds a provision in the assignment that he may at any time redeem these policies by payment of the sum of $500 with interest at 6 per cent. We do not think this in effect changes the instrument itself, which assigns the two policies, but in effect leaves it as it was with a right to redeem which right the insured never exercised.

Was exhibit 2 delivered to the appellee? The rule as announced in *Northwestern Mutual Life Ins. Co. v. Wright,* 140 N. W. 1078 (153 Wis. 252), is: "No particular act on the part of a vendee or assignee is necessary to a 'delivery;' a delivery to a third person and acceptance by him constituting a delivery to the new owner, where the transaction is beneficial to the new owner, even though the new owner has no present knowledge of such delivery, an acceptance by him being presumed until the contrary is shown." Likewise, in *Kaufman v. State Savings Bank,* 114 N. W. 863 (151 Mich. 65) : "Policies of insurance against fire on furniture owned by a wife, but made payable to her husband, after a loss by fire, were assigned by him to her and deposited by him with the respective insurance companies. *Held,* that her assent to the assignment, and her acceptance of it, may be presumed, the assignment being for her benefit;" in *Appeal of Colburn,* 51 Atl. 139 (74 Conn. 463) : "Where

a husband assigned a paid-up life policy to his wife, her failure to dissent from such assignment was an implied acceptance;" and in *Richardson v. White*, 44 N. E. 1072 (167 Mass. 58): "The assignment having been communicated to plaintiff and assented to by him, it was not necessary that there should have been an actual delivery of the policy." Applying the foregoing principles to the facts, we hold that W. R. Dalbey's delivery of the assignment to appellee's mother for the appellee, which assignment was given for a valuable consideration, her acceptance thereof and the appellee's knowledge shortly thereafter of its delivery and contents, which was beneficial to her, without objection, is an effective delivery thereof.

Having determined that the policies were assigned and that the assignment was delivered, the next matter for our consideration is whether or not they were assignable. The general rule as announced in 5 C. J. 905, is: "A valid assignment of a chose in action evidenced by a written instrument may be made either by a separate writing, or by indorsement on the original instrument;" as has been held in *In re Moore,* 191 Mich. 694, 158 N. W. 148: "It is undoubtedly now the general rule that choses in action may be transferred by written assignment, without manual delivery of them;" likewise, in *New York Life Ins. Co. v. Flack,* 3 Md. 341: "An insurance policy is but a chose in action for the payment of money, and therefore assignable;" and as announced by this court in *Dvorak v. Kucera,* 130 Neb. 341, 264 N. W. 737: "An oral assignment or pledge of a life insurance policy as security for a debt of the assured is valid between the parties, notwithstanding a provision in the policy that no assignment shall be valid unless in writing and filed with the insurer." These policies, which were fully paid up and payable to the estate, were therefore assignable. Next, was it necessary that these policies be actually delivered with the assignment? 5 C. J. 902, and 6 C. J. S. 1095, sec. 48, announce the rule to be: "Thus, where an assignment of a chose in action is made by a separate paper it will be valid, although the

written evidence of the chose in action is not delivered;" as held in *Lincoln v. Equitable Life Assurance Society*, 124 Miss. 153, 87 So. 6: "The point made by appellant that the assignment is void because there was no delivery of the policy deserves but scant consideration, for the reason it is elementary that an assignment in such cases is equal to a delivery;" as announced in *Appeal of Colburn*, 74 Conn. 463, 51 Atl. 139: "Where an obligation for the payment of money is absolute, although the time of payment has not arrived, the fund may be assigned, notwithstanding the document creating or evidencing the duty to pay it be retained in the hands of the assignor;" and as stated in 6 Couch, Cyclopedia of Insurance Law, 5228, sec. 1458n: "In order to effect a valid assignment, there must be either an actual or constructive delivery of the policy to the assignee, actual delivery of an assigned policy by the insured to the assignee not being essential to the validity of the assignment, since an actual *bona fide* assignment effects a constructive delivery, which is equal in insurance law to an actual manual delivery. * * * And, if there has been an actual assignment, the policy may be left in the possession of the assignor, since actual physical delivery thereof is not essential."

From the facts as herein stated and the law herein announced, we find the two insurance policies of the insured payable to his estate, which is solvent, paid up and assignable on February 20, 1928, and by exhibit 2, which was given for a consideration of $500, they were assigned to the appellee, the proceeds of which, less the loans thereon, to be paid to the assignee at insured's death; that there was an effective delivery thereof between the parties when the assignment was delivered to Mrs. Keirns and appellee had knowledge thereof and of its contents and made no objection thereto; that by the assignment all rights of the insured were assigned to the appellee, except the right to redeem and there was no pledge of the policies as security for money advanced nor was any actual delivery of the policies necessary as the assignment thereof was a constructive delivery.

Under these findings the cases cited by appellants as to the necessity of delivery and possession of chattels under a pledge are not discussed for they are not applicable to the situation in this case.

From the foregoing discussion of the rights of the parties under the assignment, the appellee had no right to these funds until the death of W. R. Dalbey on January 24, 1941, and the statute of limitations did not bar the claim under our holdings as stated in *Melville Lumber Co. v. Scott,* 135 Neb. 379, 281 N. W. 803: "Ordinarily the statute of limitations begins to run when a cause of action accrues."

The cross-appeal of the appellee presents the question of whether interest should have been allowed on the amount of the recovery from February 20, 1928, in place of March 10, 1941, the date the appellants collected the proceeds of the two policies being the principal amount thereof less the loan on the policies. Appellee cites in support thereof sections 45-102 and 45-104, Comp. St. 1929, as amended, and section 62-117, Comp. St. 1929, together with cases cited thereunder holding that, where a debtor and creditor relationship is established by an instrument which provides for the payment of money but wherein no rate of interest is fixed, the law implies a contract for interest at the legal rate. This rule is correct, but under our construction of the instrument dated February 20, 1928, it was an assignment of the policies in consideration of the $500 advanced and the proceeds of the policies less the loan thereon to be paid to the appellee upon insured's death. There was no agreement to pay any money nor was the appellee entitled to receive any until the death of the insured and the collection on these policies. Therefore, the lower court was right in entering a judgment for the amount received from the policies plus interest from the date it was collected.

AFFIRMED.