James F. SCHAER, Appellant,

v.

WEBSTER COUNTY, Iowa, and
Webster County Treasurer,
Appellees.

No. 00–1678.

Supreme Court of Iowa.

May 8, 2002.

James E. Nervig of Petosa, Petosa, Boecker & Nervig, L.L.P., Clive, for appellant.

Stephen J. Lickiss, Assistant County Attorney, for appellees.

CADY, Justice.

In this action by the assignee of a certificate of purchase of real estate against a county and county treasurer, we must decide if Iowa Code section 448.10 (1995) authorizes a claim for damages when the description of the parcel used by the county treasurer to sell the real estate and assign the certificate of purchase failed to exclude a platted subdivision located within the parcel. On review, we conclude the assignee has no cause of action, and affirm the decision of the district court.

## I. Background Facts and Proceedings.

James F. Schaer is a resident of the city of Des Moines. He is a commercial real estate broker and a self-described "lender," based on his practice of purchasing assignments of certificates of purchase of real estate from county treasurers following tax sales. Schaer considers the assignments to be a loan of the amount of the delinquent taxes on the property until the taxpayer redeems the property. Schaer also considers the certificate of purchase to be a security device that entitles him to acquire title to the property in the event the taxpayer fails to redeem the property. Schaer has engaged in this practice for nearly thirty years.

On June 19, 1995, the Webster County Treasurer, Janice F. Horton, conducted the annual Webster County tax sale. She offered at public sale all parcels of real estate in the county on which taxes were delinquent, including a parcel of real estate described within the county data storage and retrieval system as:

31–89–28 FTD AG LAND-W PT OF NE NE (EX 756.31′ X 155′) (EX N1003.69′ OF E311′ OF NE NE).

The parcel was known as the Donald Grell property. It is located within the city limits of Fort Dodge, near the southern border, in the southwest part of the city. The description identified a portion of a forty-acre unplatted parcel within an original unplatted section.

After the County Treasurer failed to receive a bid for the Grell property at the public sale, Webster County submitted a bid for the parcel in the amount of $20,198, which equaled the amount of the delinquency.[1] The County Treasurer then issued a certificate of purchase. The certificate included the same description of the parcel as contained in the notice of sale.

On August 30, 1995, the County assigned the certificate of purchase of the Grell property to Schaer, along with certificates of purchase of numerous other parcels of real estate in Webster County purchased by the County at the tax sale. Schaer paid the County Treasurer $21,430 as consideration for the assignment of the Grell property. Schaer received a certificate of purchase for the real estate. The following provision was added to the bottom of the certificate:

ASSIGNMENT: FOR THE PAYMENT OF $21,430.00, AS PER AGREEMENT, I HEREBY ASSIGN ALL RIGHTS, TITLE, AND INTEREST IN THE CERTIFICATE TO: James F. Schaer . . . .

The provision also contained Schaer's address and social security number. It was

---

1. When no bid is received on a parcel offered at a tax sale, or the bid received is less than the amount due, the county must bid for the property in a sum equal to the amount due. Iowa Code § 446.19. However, the county is not actually required to pay the county treasurer for the purchase. *Id.*

dated August 30, 1995, and signed by Janice F. Horton, as assignor.

Prior to purchasing the assignment, Schaer checked with the office of the county assessor and learned the parcel contained 21.95 acres. He believed the "AG" in the description meant the land was zoned agricultural, but did not verify the zoning classification with city officials. He also observed the real estate by driving by the land in his vehicle.

In October 1998, after Schaer served notice of the expiration of the right of redemption on the possessor of the Grell property, he discovered the description of the parcel contained in the certificate of purchase did not match the tracing of the parcel made from the original plat book of Webster County. First, the certificate description failed to exclude a platted housing subdivision located in the upper northwest corner of the original forty-acre parcel. This subdivision was 651.2 feet on its east line and 363.2 feet on its south line. Second, the first exception noted in the certificate description failed to identify its location. Finally, the certificate description purportedly identified the parcel as agricultural land. It was actually zoned for heavy industrial use. As a result, the description of the parcel used by the County Treasurer described an area which was larger than the actual size of the parcel, and was inadequate, without reference to the plat books, to determine its boundaries.

After discovering the inconsistencies, Schaer refused to return the certificate of purchase to the County Treasurer and remit the appropriate fees to acquire the

deed for the property. Instead, he filed a petition with the district court asking the certificate and assignment be declared void and that he be awarded damages for the amount of money he paid in connection with the assignment, plus interest. Schaer claimed that the failure to include the subdivision as an exception in the description resulted in a misleading overstatement of the boundaries of the parcel, and that the rights in the parcel he received from the assignment were significantly less than the description led him to believe. He claimed he would not have purchased the assignment if he had known the true boundaries.

The case was submitted to the district court for trial on stipulated facts and other evidence. The evidence revealed the description contained in the certificate of purchase was developed by the county auditor and was the description of the property as maintained by the county system of legal descriptions. This system contains descriptions for each parcel of real estate in the county. Additionally, the deputy county auditor, Alan Wooters, testified the description of the Grell property properly identified the property as it appeared in the plat books, and he was able to use the description to trace the correct boundaries of the parcel from the plat books. Without looking at the plat books, however, the description contained in the certificate of purchase did not reveal the existence of the subdivision in the tract. Under the system used by the county auditor to describe parcels in the county system, an unplatted parcel is described by governmental survey.[2] The description does not

---

2. Our country developed a uniform method to describe land following the Revolutionary War and the subsequent growth of our country through the acquisition of vast areas of land under the Louisiana Purchase and other acquisitions. 14 Richard R. Powell, *Powell on Real Property* § 81A.05[2][c][i], [ii], at 81A–

87 (Michael Allan Wolf ed., Matthew Bender 1999). This method was based on surveyed grids controlled by longitude and latitude lines, and is still maintained today. *See id.* § 81A.05[2][c][ii], at 81A–87. The juncture of a particular prime meridian line, or north-south longitude line, and an east-west latitude

specifically exclude any platted subdivisions created within the parcel because subdivisions are maintained in different plat books and are described differently.[3] The subdivision within the original forty-acre tract in this case was separately described as "Auditor's Subdivision of Part of NE1/4 of the NE1/4 of Section 31, Township 89 North, Range 28 West, Webster County, Iowa." It contained eighteen lots, numbered one through eighteen.

The district court determined Schaer had no statutory right to damages based on any deficiency in the description of the property because the County Treasurer was not responsible for creating the description, but merely used the description utilized by the county system. The district court also rejected Schaer's claim that the assignment was void.

Schaer appeals. He claims the County is liable for his expenditures, with interest, under the statutory provision providing for indemnification from the county when a parcel of land is sold at tax sale "in conse-

line, or base line, controls each grid. *Id.* These grids divide land into square townships that are a length of six miles by six miles, "identified by a combination of range and township numbers." *Id.* at 81A–88. "A range is a tier of townships measured either east or west of the prime meridian." *Id.* "[A] tier of townships [is] measured either north or south of the baseline[,][and] is [also] called a township." *Id.* This system allows each township to be distinguished from all other townships. *Id.* Each township is then subdivided into thirty-six-one-square-mile parcels containing 640 acres, known as sections. *Id.* at 81A–89. These sections are then numbered in a distinct order, which again describes a distinct parcel of land. *Id.* Each section is further subdivided into half-sections and quarter-sections, with each quarter section further broken down into halves and quarters so that a quarter-quarter section represents a forty-acre tract of land. *Id.* at 81A–90. A forty-acre tract can be further divided into smaller tracts by the same method. *Id.*

This system gives each tract a distinct description. *Id.* When a parcel cannot be described in this fashion because it is an odd shape, then the older metes and bounds system of delineating the boundaries of land based on a designated beginning point can be used in combination with the governmental survey method to describe the land. *Id.* The metes and bounds method of description dates back to colonial times. *See id.* § 81A.05[2][c][i], at 81A–87.

3. Land can also be described by reference to a plat. *Id.* § 81A.05[2][d], at 81A–92. "A plat is a recorded survey of a subdivision" approved by a governmental authority, which shows a beginning point of the subdivision and the dimensions of each lot. *Id.* Each lot is then assigned a number, which allows each tract to be described by reference to a number within the plat instead of a physical description of the boundaries. *See id.* Plats are normally created in urban areas, particularly as a means to develop land into residential lots. *Id.* Although the plat is carved out of a grid, it takes on a new identity of platted land and is described by a lot number. *Id.*

In Iowa, the county auditor maintains plat books showing the surveyed grids covering the unplatted property, including any exclusions that may have been created. The method of describing sections is the same method used to describe each unplatted parcel as shown in the plat book, and is the same description used within the county system to describe an unplatted parcel of land for the purposes of the tax sale.

When land is subdivided, it is no longer considered by the county auditor to be a part of the unplatted section. Platted or subdivided parcels are removed from the plat book containing the unplatted property, and are recorded in a separate subdivision plat book. A notation is made in the plat book containing unplatted property, at the location of the subdivision, indicating the subdivision has been created, and the boundaries are marked. A notation is also made indicating the page of the subdivision plat book where the addition can be found. The subdivision plat book contains a drawing of the subdivision. Under this system, all unplatted land automatically excludes any platted subdivision that may have been created within the unplatted tract. Thus, the county auditor does not exclude subdivisions within an unplatted tract in the description of an unplatted tract.

quence of error in describing it." *See* Iowa Code § 448.10. He also claims the assignment is void because the endorsement on the certificate of purchase does not constitute a written agreement as required by section 446.31. He further claims the assignment is void because the deficiencies in the description prevented the parties from acquiring a mutual intent to enter into the assignment.

## II. Standard of Review.

We review a district court's interpretation of a statute for the correction of errors at law. *T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 161 (Iowa 1999). Likewise, we review the interpretation of a contract for errors. *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999).

## III. Statutory Indemnification.

The county treasurer in each county in Iowa is authorized to conduct a tax sale in June of each year for all real estate in the county on which taxes are delinquent. *See* Iowa Code § 446.7. The county auditor annually provides a list of the taxes due on each parcel in the county to the county treasurer, which is used to collect the taxes and determine any delinquency for any parcel. *See id.* §§ 443.2, 443.4, 445.10. The sale of property at the tax sale can result in the transfer of ownership of the property to the purchaser or the assignee of the purchaser if the parcel is not subsequently redeemed by payment of the delinquent taxes, fees, costs, and interest.[4] *See id.* §§ 447.1, 448.1. The law further details the procedures that must be followed for the sale, redemption, and issuance of a deed. *See generally id.* chs. 446 (tax sales), 447 (tax redemption), 448 (tax deeds).

One statutory procedure governing tax sales requires the county treasurer to give public notice of the sale. This notice must contain "a description of the parcel to be sold that is clear, concise, and sufficient to distinguish the parcel to be sold from all other parcels." *Id.* § 446.9(2). The parcels may be described using "letters and figures ... to denote townships, ranges, [and] sections...." *Id.* § 446.13. The county treasurer is also required to record each sale "in the county system" by "describing each parcel ... as they are described in the copy of the notice...." *Id.* § 446.24. The county system is defined as that "method of data storage and retrieval as approved by the auditor of state," and includes tax lists. *Id.* § 445.1(3). The county treasurer is also required to deliver a certificate of purchase to the purchaser of each parcel "describing the parcel ... as shown in the county system identifying the parcel...." *Id.* § 446.29.

If the parcel is not subsequently redeemed following the tax sale, the purchaser or assignee can receive a deed to the property by returning the certificate of purchase to the county treasurer. *Id.* § 448.1. Chapter 448 sets out the procedure for the issuance of a deed. *See id.* It also describes the effect of the deed and the requirements and consequences of any challenge to that deed. *See id.* §§ 448.3, .6–.12. Foremost, the deed vests title of the property in the purchaser. *Id.* § 448.3. The deed also constitutes presumptive evidence in any action that may arise regarding the rights of the purchaser to the parcel conveyed by the county treasurer that specific procedures were properly followed, and further constitutes conclusive evidence of other matters. *Id.* §§ 448.4, .5.

***

4. Redemption includes interest on the amount paid by the purchaser or assignee of two percent per month, with a fraction of a month counting as the entire month. *Id.* § 447.1.

The Code then sets out the limited facts and circumstances that must be proven for a person claiming title adverse to the title conveyed by the county treasurer to defeat the deed. *See id.* §§ 448.6–.12. These circumstances generally involve mistakes in the tax sale so the parcel sold was not subject to taxes or was properly redeemed, or the taxes were paid prior to the sale or never properly assessed or levied. *See id.* § 448.6. The Code then describes the legal consequences. In the event the tax sale took place due to a mistake in an entry made in the county system, so that the taxes and other amounts due on the parcel had been paid prior to the sale, the deed issued by the county treasurer is deemed not to convey title. *Id.* § 448.8. Similarly, the sale and title are void if the owner of the parcel sold defeats the title by proving fraud by the officer selling the parcel or by the purchaser. *Id.* § 448.9. Iowa Code section 448.10 then provides a remedy for the purchaser. It states:

If, by mistake or wrongful act of the county treasurer, a parcel has been sold on which no tax was due at the time, or when a parcel is sold in consequence of error in describing it within the county system, the county shall hold the purchaser harmless by paying the purchaser the amount due to which the purchaser would have been entitled had the parcel been rightfully sold, and the treasurer and the treasurer's surety shall be liable to the county to the amount of the treasurer's official bond; or the purchaser, or the purchaser's assignee, may recover the amount directly from the treasurer and the treasurer's surety.

This statute is entitled "Wrongful sales—purchaser indemnified," and contains two alternative conditions. Schaer relies only on the second condition for his claim of relief. The first condition involves a sale of a parcel where, due to mistake or wrongful act, no tax was due. *Id.* The second condition pertains to the sale of a parcel "in consequence of error in describing it within the county system." *Id.*

Under either condition, the purchaser is given a remedy against either the county or the county treasurer and the treasurer's surety. First, the statute requires the county to "hold the purchaser harmless." The statute defines this remedy as requiring the county to pay "the purchaser the amount due to which the purchaser would have been entitled had the parcel been rightfully sold." *Id.* In turn, the treasurer and treasurer's surety are made liable to the county. *Id.* Alternatively, the purchaser, or assignee, may seek recovery "directly from the treasurer [or] the treasurer's surety." *Id.*

Schaer claims he is entitled to void the sale under the statute and receive damages because the description used by the County to describe the parcel he purchased overstated its size and wrongfully included an area that was not subject to tax sale. Schaer does not claim he purchased the wrongfully included land, but asserts the description used by the County to describe the parcel he purchased was misleading and insufficient to convey title. Thus, we must determine if the remedy provided under section 448.10 was intended to apply to the type of error asserted by Schaer.

Section 448.10 was enacted by our legislature in 1851, *see id.* § 509 (1851), and has essentially maintained its present language since 1860. *See id.* § 785 (1860). It was amended in 1991 to insert the present phrase "within the county system" in place of the former phrase "in the tax receipt." *See* 1991 Iowa Acts ch. 191, § 109 (codified at Iowa Code § 448.10 (1992)).

We have not had an opportunity to construe this statute for over a century. In 1898, we held the remedy under the stat-

ute was limited to mistakes by the county treasurer. *Lonsdale v. Carroll County,* 105 Iowa 452, 457, 75 N.W. 332, 333 (1898). We reasoned that our legislature would not have specifically made the county treasurer and the treasurer's surety ultimately liable under the statute if it had intended the remedy to apply to the mistakes or errors by other county officials who supply information to the county treasurer. *See id.* The district court relied on *Lonsdale* in dismissing Schaer's petition.

Earlier, we held that the remedy under the statute was inapplicable to a claim by a purchaser of a parcel of land that the description of the property in the certificate of purchase was too vague to convey title. *See Lindsey v. Boone County,* 92 Iowa 86, 89–90, 60 N.W. 173, 174–75 (1894). We observed that the doctrine of caveat emptor applied to tax sales, and the purchaser at a tax sale must beware and fully investigate the description of the premises. *Id.* at 88, 91, 60 N.W. at 174–75. We emphasized each description was open to inspection, and a purchaser at a tax sale buys only what the county offered to sell. *Id.* at 90, 60 N.W. at 175.

Schaer maintains these holdings are no longer applicable in light of the 1991 amendment to the statute. He claims the amendment inserting the phrase "within the county system" expanded liability under the statute to include mistakes or errors by other county offices who are part of the county system, including the county assessor and county auditor. We disagree. The 1991 amendment merely reflects the adoption of the modern system of data storage and retrieval utilized by a county. *See* Iowa Code § 445.1(3) (1995) (" 'County system' means a method of data storage and retrieval as approved by the auditor of state...."). The "county system" is a collective term that includes records, tax lists, and other matters kept by the county audi-

tor, assessor, and treasurer. *Id.* § 443.23. For purposes of section 448.10, it still refers to the description of the property utilized by the county for the purpose of taxation. Moreover, as in the past, the language of the statute continues to make the county treasurer and treasurer's surety ultimately liable for mistakes and errors. This limitation on liability continues to imply that the remedy under the statute is confined to the mistakes and errors of the county treasurer, not other county offices. *See id.* § 448.10.

However, at the time we decided *Lonsdale* and *Lindsey,* the county treasurer was required to use the description of the property from the tax list prepared by the county auditor in giving notice of sale. *See Lonsdale,* 105 Iowa at 456, 75 N.W. at 333; *Lindsey,* 92 Iowa at 89, 60 N.W. at 174. Furthermore, this same description was required to be used by the county treasurer in recording the sale and issuing the certificate of purchase. *See Lindsey,* 92 Iowa at 89, 60 N.W. at 174. These statutory mandates clearly influenced our holdings in *Lonsdale* and *Lindsey.* Any error or mistake in the description was not the responsibility of the county treasurer. *See id.* In 1986, section 446.9 was amended to require the county treasurer to serve the notice of tax sale containing "a description of the parcel to be sold which is clear, concise, and sufficient to distinguish the parcel to be sold from all other parcels." 1986 Iowa Acts ch. 1139, § 4 (codified at Iowa Code § 446.9 (1986)) (striking the requirement that description of tract in notice of tax sale be taken from tax list). Under this statute, the county treasurer has a duty to describe property sold at a tax sale in the manner set forth in section 446.9. Additionally, the description used by the county treasurer in the notice of sale is required to be recorded in the county system at the time of the tax sale, and is used in issuing the certificate of

purchase. *See id.* §§ 446.24 (record of sales), .29 (certificate of purchase). Thus, in this case, Schaer argues the County Treasurer was responsible for the description, and is liable to him under the statute.

We agree the county treasurer is responsible under section 446.9 to describe property in a certain manner in offering it for a tax sale. Thus, an error in a description is a mistake of the county treasurer. Yet, this does not mean the remedy under section 448.10 is available to Schaer. We must consider whether the type of description error claimed by Schaer was intended to fall within the remedy provided by section 448.10.

We begin by emphasizing that the remedy established by section 448.10 arises within this comprehensive statutory scheme authorizing the county to sell a parcel of land in order to pay delinquent taxes owed on the land by the owner of the parcel. This perspective helps explain the necessity and nature of the remedy provided under section 448.10. The statutory scheme ultimately empowers the county to transfer ownership of a parcel of land by delivering a deed to the purchaser. This deed terminates the rights of the person who had owned the parcel subject to the delinquency. Under such a scheme, the need for a remedy arises in the event the county is unable to deliver a deed to the buyer for the parcel purchased, or cannot deliver a deed that could not be defeated by the owner, because the parcel was wrongfully subject to tax sale by the county. In this case, the rights of the owner prevail over those of the purchaser, and a remedy is necessary to compensate the purchaser. Thus, the remedy rests on the wrongful sale of a parcel by the county, together with the superior rights of the owner of the parcel over any purchaser.

█ The two conditions that give rise to the remedy under section 448.10 reflect this backdrop. They involve tax sales that should not have occurred because the owner's rights were never implicated by the delinquent tax provisions. Under the first condition, the rights of the owner were never implicated because "no tax was due at the time" the parcel was sold. *Id.* § 448.10. Under the second condition, the rights of the owner were never subject to delinquency because an "error [made] in describing [the parcel] within the county system" caused the wrong parcel to be sold by the county. *Id.* Schaer attempts to broaden the second condition to include description errors not implicating the rights of the owner, but which only create confusion and uncertainty for the purchaser regarding the size and nature of the parcel sold. Yet, the language of the statute precludes such a broad interpretation. By using the language "a parcel is sold in consequence of error in describing it within the county system," our legislature targeted the reason the county *sold* the parcel, not the reason the buyer *purchased* the parcel. This is also consistent with our approach over the past century that an error in the certificate of purchase of property at a tax sale cannot be the consequence of the sale. *Lindsey,* 92 Iowa at 89, 60 N.W. at 174. The relevant inquiry is not whether the description error caused the buyer to purchase the parcel. Instead, the description error must exist "within the county system" that caused the county to erroneously sell the parcel. Indeed, that is what the legislature meant by the phrase "a parcel is sold in consequence of error in describing it within the county system."

█ The remaining portions of the statute support this interpretation. *See McCracken v. Iowa Dep't of Human Servs.,* 595 N.W.2d 779, 784 (Iowa 1999) (we "construe all parts of a statute together"). We observe the remedy under sec-

tion 448.10 requires the county to "hold the purchaser harmless by paying the purchaser the amount due to which the purchaser would have been entitled had the parcel been rightfully sold...." Iowa Code § 448.10. The requirement to hold a purchaser "harmless" typically refers to indemnification, which is a form of restitution that places "final responsibility between two obligated persons where equity would lay the ultimate burden." *Iowa Elec. Light & Power Co. v. Gen. Elec. Co.*, 352 N.W.2d 231, 236 (Iowa 1984). This language supports the concept that the county is responsible to the buyer of a parcel at a tax sale in the event a deed cannot be ultimately delivered under those specific circumstances set forth in the statute when the rights of the buyer can be defeated by the rights of the owner. We do not believe our legislature would have articulated the remedy using the "hold harmless" language if it intended a buyer to void a sale based on descriptions that merely generated confusion over the size or location of a parcel, and when the buyer's rights to the parcel could not be defeated by the owner's. It would have simply provided for a refund, as in section 448.11.[5] *See Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 835 (Iowa 2002) (if legislature wanted to provide for a certain thing, it could have so provided, as it did in other statutes).

The nature of the remedy under the statute also supports our interpretation. The statute requires the county to pay "the purchaser the amount due to which

the purchaser would have been entitled had the parcel been rightfully sold...." Iowa Code § 448.10. When a parcel has been "rightfully sold" at a tax sale, the purchaser or assignee becomes "entitled" to the return of the amounts paid to the county only in the event the parcel is redeemed so that the county is unable to deliver the deed following the sale. Thus, the remedy for wrongful sales follows the same approach. The "amount due" in the event of a wrongful sale relates to the amount to which the purchaser would have been entitled had the county rightfully sold the parcel and, as with a rightful sale, is subsequently unable to deliver the deed. Thus, whether the sale was right or wrong, the remedy under the statute hinges upon the inability of the county to deliver a proper deed. On the other hand, description errors do not necessarily prevent the delivery of a deed or make a sale wrongful.

■■■ This interpretation of the statute is also consistent with our longstanding principle that the doctrine of caveat emptor applies to tax sales, which requires a purchaser to fully investigate the description of the parcel. *Lindsey*, 92 Iowa at 91, 60 N.W. at 175. The interpretation sought by Schaer is contrary to this principle. We will not interpret a statute to be inconsistent with our common law principles absent a clear intent. *State v. Carter*, 618 N.W.2d 374, 377 (Iowa 2000); *State v. Pace*, 602 N.W.2d 764, 771 (Iowa 1999).

We are convinced the statute exists to give a purchaser of a parcel at a tax sale a remedy against the county in the event the

---

**5.** Iowa Code section 448.11 provides:

> When it is made known to the county treasurer, before the execution of a deed for a parcel sold, or if the deed is returned by the purchaser, that a parcel was sold which was not subject to taxation, or upon which the taxes had been paid, the treasurer shall make an entry in the county system that the parcel was erroneously sold, and the entry shall be

evidence of the fact, and the purchase money shall be refunded to the purchaser.

This section allows the county treasurer to correct certain mistakes without formal action or a legal proceeding. Schaer is not entitled to relief under this section because the two conditions do not apply. The parcel sold in this case was subject to taxation, and the taxes had not been paid.

county wrongfully sold the parcel due to one of the two circumstances described in section 448.10. When a parcel is erroneously sold, the county cannot transfer ownership to the purchaser and, consequently, the purchaser may recover the amount to which the purchaser would have been entitled had the county rightfully sold the parcel but was subsequently unable to deliver the deed. *See* Iowa Code § 448.10. There is nothing within the statute to indicate the legislature intended the remedy to extend to claims based on erroneous descriptions that did not implicate the interest of the owner of the parcel at the time of the tax sale.

 Our examination of the claim urged by Schaer in this case reveals he does not claim the County sold him a parcel that was not subject to tax sale and is now unable to deliver the deed. Instead, he claims the description was defective, principally because it overstated the size and character of the parcel. Yet, he acknowledges the subdivision contained within the area described was not subject to the tax sale and was not purchased by him. His only complaint is that he did not discover this discrepancy until after he purchased the parcel.

We believe this type of claim falls precisely within our holding in *Lindsey,* and outside the parameters of section 448.10. Schaer had a duty to investigate the description prior to purchasing the parcel and should not have waited to conduct his investigation until after the sale. *See Lindsey,* 92 Iowa at 91, 60 N.W. at 175. If he had conducted his investigation prior to the sale, he would have discovered exactly what he discovered in the investigation he performed after the sale.

## IV. Written Assignment.

 Iowa Code section 446.31 requires an assignment of a certificate of purchase acquired by the county "be by written agreement," with a copy "filed with the treasurer." Iowa Code § 446.31. Schaer claims the addendum to the certificate of purchase failed to comply with this statutory mandate because it did not detail the terms of the assignment and was not signed by Schaer. He claims noncompliance with the statute renders the assignment void.

 "An assignment is a transfer to another of the whole of any property or right in property." *Red Giant Oil Co. v. Lawlor,* 528 N.W.2d 524, 533 (Iowa 1995); *see Midland Mut. Life Ins. Co. v. Mercy Clinics, Inc.,* 579 N.W.2d 823, 833 (Iowa 1998). In the absence of a statutory provision prescribing a particular form for an assignment, no special words are necessary to effect an assignment. *Petty v. Mut. Benefit Life Ins. Co.,* 235 Iowa 455, 465, 15 N.W.2d 613, 618 (1944); 6A C.J.S. *Assignments* § 43(b), at 655 (1975); III E. Allan Farnsworth, *Farnsworth on Contracts* § 11.3, at 67 (2d ed.1998) [hereinafter Farnsworth]. Any language is sufficient to vest property in an assignee if it shows the intent of the owner to transfer the property. *Petty,* 235 Iowa at 465–66, 15 N.W.2d at 618; 6A C.J.S. *Assignments* § 43(b), at 655–56; III Farnsworth, § 11.3, at 67 & n.4.

 As determined by the district court, the language added to the certificate of purchase clearly expressed the intent of the County to transfer all rights in the certificate to Schaer. The language expressed the essential terms of the assignment, including the consideration paid by Schaer. Moreover, the statute does not require any specific terms of the assignment, or that the agreement be signed by the assignee. *See* Iowa Code § 446.31. The statute also does not require the written agreement to be a separate document

from the certificate. *See In re Dalbey's Estate,* 143 Neb. 32, 8 N.W.2d 512, 515 (1943) ("'A valid assignment ... evidenced by a written [agreement] may be made either by a separate writing, or by indorsement on the original instrument ....'" (citation omitted)); 6A C.J.S. *Assignments* § 49, at 664 (valid assignment may be by separate writing); *see also* III Farnsworth, § 11.3, at 75 (discussing assignments "by indorsement on the writing under which the rights arise" and "by a separate writing"). Thus, the district court did not err in concluding the County Treasurer complied with the writing requirements of section 446.31.

### V. Lack of Mutual Assent.

 Schaer asserts the vague description utilized by the County Treasurer in describing the property destroyed the mutual assent necessary to support the assignment because the assignment covered a smaller parcel than he bargained for. He claims the lack of mutual assent rendered the assignment void.

 For a contract to be valid, the parties must express mutual assent to the terms of the contract. *See Heartland Express, Inc. v. Terry,* 631 N.W.2d 260, 268 (Iowa 2001); *Magnusson Agency v. Pub. Entity Nat'l Company–Midwest,* 560 N.W.2d 20, 26 (Iowa 1997); 17 C.J.S. *Contracts* § 37, at 470 (1999); I Farnsworth, § 3.1, at 184. If there is a misunderstanding in the language that relates to the object of the agreement so that "one party [understands] [it] is buying one thing and the other party thinks [it] is selling another thing, no meeting of the minds occurs, and no contract is formed." *Hill–Shafer P'ship v. Chilson Family Trust,* 165 Ariz. 469, 799 P.2d 810, 814 (1990); *see* II Farnsworth, § 7.9, at 266–67. Yet, "mutual assent is based on objective evidence, not on the hidden intent of the parties."

*Hill–Shafer P'ship,* 799 P.2d at 815; *see Heartland Express, Inc.,* 631 N.W.2d at 268; *McCarter v. Uban,* 166 N.W.2d 910, 913 (Iowa 1969); I Farnsworth, § 3.6, at 192–94. The misunderstandings of the parties must be reasonable under the circumstances to support a finding of a lack of mutual assent. *See Hill–Shafer P'ship,* 799 P.2d at 815; Restatement (Second) of Contracts § 20 (1979) (effect of misunderstanding).

In this case, we have previously determined that the description used by the County Treasurer met the statutory standard. Moreover, the description was adequate for Schaer to determine the precise boundaries of the property by using the plat books maintained by the county auditor. *See Ray v. Robben,* 225 Ark. 824, 285 S.W.2d 907, 908 (1956) (description sufficient when extrinsic evidence used as a guide in identifying land); *Foster v. Civale,* 134 Conn. 469, 58 A.2d 520, 521 (1948) (same); *Welsh v. Jakstas,* 401 Ill. 288, 82 N.E.2d 53, 58 (1948) (sufficient if contract furnishes the means of identifying the intended property so surveyor can locate the specific boundaries by examining listed physical conditions, measurements, and monuments); *Posey v. Kimsey,* 146 Ky. 205, 142 S.W. 703, 706 (1912) (writing need not identify the exact location of the boundaries); *Burgon v. Cabanne,* 42 Minn. 267, 44 N.W. 118, 118 (1890) (description adequate if writing provides the means to determine boundaries); *Meyer v. Kesterson,* 151 Or.App. 378, 950 P.2d 896, 903 (1997) (description of land adequate if possible to ascertain from the description, and the aid of extrinsic evidence, which property was intended to be conveyed); *Case v. Brier Hill Collieries,* 145 Tenn. 1, 235 S.W. 57, 59 (1921) (same); *McDonald v. Denson,* 199 S.W.2d 707, 708 (Tex.App.1947) (where portion of larger tract conveyed, description adequate if designated acreage

and general location, despite failure to define length and course of conveyed property); *Kight v. Kight,* 64 W.Va. 519, 63 S.E. 335, 336 (1908) (description sufficient if contract refers to lines or objects that can be identified). It was not reasonable for Schaer to rely upon the description for the precise boundaries to the property without investigating the actual size and shape as revealed by the plat books. He had a duty to investigate. *Lindsey,* 92 Iowa at 91, 60 N.W. at 175. Thus, the claim of a misunderstanding by Schaer was not justified under the circumstances, and does not constitute a lack of mutual assent.

## VI. Conclusion.

We conclude Schaer had no remedy under section 448.10. The assignment was proper under section 448.31 and was not void based on lack of mutual assent. Because Schaer failed to establish a legal basis for recovery, it is unnecessary for us to address his damage claim. We affirm the district court.

**AFFIRMED.**