# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3506

_____

| | | |
|---|---|---|
| Great Plains Real Estate Development, L.L.C., | * * * | |
| Appellant, | * * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Union Central Life Insurance Company; Summit Investment Partners; Carillon Investments, Inc.; LaSalle Bank National Association; GMAC Commercial Mortgage Corporation, | * * * * * * | |
| Appellees. | * | |

_____

Submitted: May 14, 2008
Filed: August 7, 2008 **(Corrected 8/21/08)**

_____

Before RILEY, BOWMAN, and HANSEN, Circuit Judges.

_____

RILEY, Circuit Judge.

At issue is the enforceability of a prepayment premium provision (PPP) contained in a promissory note. Great Plains Real Estate Development, L.L.C. (GPR), the borrower, asserts this provision was either waived or was unenforceable under Iowa law. The lender, Union Central Life Insurance Company (UCL), disagrees. The

district court[1] granted UCL's motion for summary judgment, finding the PPP was not waived and was enforceable and awarding UCL attorney fees and costs under the terms of both the promissory note and the mortgage securing the note. GPR appeals. Finding no error, we affirm.

## I.    BACKGROUND

On November 17, 1989, GPR's predecessor executed a ten-year promissory note in the amount of $5,875,000 to UCL (Note). The Note had a maturity date of December 1, 1999. The interest rate on the Note was fixed at 9.25% through January 1, 1995, when the rate was adjusted to 9.5%. Under the Note, GPR agreed to pay attorney fees "incurred by the holder hereof in connection with any default or in any proceeding to enforce any provision of this Note or any instrument by which it is secured." The Note contained a PPP under which GPR could fully prepay the loan only if a payment, calculated and based on a lender lost earnings formula contained in the Note, was made to UCL. The Note did not provide for partial prepayment.

In conjunction with the Note, GPR entered into a mortgage and security agreement (Mortgage) securing the Note. The Mortgage encumbered Southern Square Shopping Center in Sioux City, Iowa. Under the terms of the Mortgage, GPR agreed to pay promptly attorney fees "incurred or expended by Mortgagee arising out of or in connection with any action, proceeding or hearing . . . including the preparation therefor and any appeal therefrom, in any way affecting or pertaining to th[e] Mortgage, the Note or the Premises."

In 1997, GPR considered refinancing the Note and solicited proposals from potential lenders including UCL. GPR sought to restructure the loan with a reduction in the interest rate and an extension of the maturity date. In a July 1, 1997 letter to

---

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

UCL, GPR's President and CEO, Robert Jackson (Jackson), proposed a waiver of the PPP requirement. While Jackson expressed "an aversion" to paying UCL the PPP, Jackson acknowledged the PPP's existence in two August 1997 letters to a mortgage broker. UCL and GPR held discussions and, on October 16, 1997, UCL sent a letter to GPR expressing its willingness "to modify the existing Note and offer you financing on the loan balance on the following basic terms." The letter specified a principal reduction of $391,280.96, a fixed interest rate of 8%, a 16-year amortization period, and an effective date of October 1, 1997. The letter made no mention of the PPP.

On October 22, 1997, GPR sent a conditional acceptance to UCL by mail and by facsimile which contained a single alteration to the terms, and did not address waiver of the PPP. UCL accepted the proposed changes on October 27, 1997, and on November 10, 1997, UCL accepted GPR's payment of $391,280.96 as a partial principal pay down in accordance with the October 16, 1997 letter.

The parties executed a written loan modification and extension agreement dated January 15, 1998, which extended the Note's maturity date to October 1, 2013, fixed the mortgage interest rate at 8%, and specified "the outstanding principal balance shall be [5.2 million] dollars, after receipt of the $391,280.96 principal pay down." The extension agreement further provided, "Except as expressly modified herein, all of the terms of the Note, the Mortgage and the other Loan Documents remain in full force and effect." The extension agreement did not mention or "expressly modify" the PPP. Jackson conceded, "During the negotiations of the Modification Agreement nothing was ever discussed about a [PPP] other than what [Jackson] had set forth in [his July 1, 1997 letter]."

In 2002, GPR secured new financing at a lower interest rate and notified UCL of its intention to pay off the Note. UCL refused to accept payment of the principal and refused to release the mortgage unless GPR paid the applicable PPP. Reserving

all rights and positions, in September 2004, GPR paid the outstanding principal balance and the PPP charge of $626,992.08.  UCL accepted the payment and released the Mortgage.

GPR filed this action in Polk County (Iowa) District Court on March 16, 2005, seeking to recover the PPP, asserting claims for declaratory judgment, breach of contract and unjust enrichment.  UCL removed the case to federal court on April 18, 2005.  UCL filed a motion for summary judgment which the district court granted.  UCL then moved for an award of attorney fees pursuant to Fed. R. Civ. P. 54(d)[2] based on the terms of the Note and mortgage.  In its response to UCL's fee request, GPR mentioned seeking leave to conduct discovery and to submit adversary submissions under Fed. R. Civ. P. 43(e),[3] but never filed a separate motion to this effect as required by the local rules.  The federal district court awarded UCL its fees and costs without any discussion of GPR's request for discovery.  This appeal follows.

## II.    DISCUSSION

We review de novo an order granting summary judgment.  See Trinity Prods. v. Burgess Steel, L.L.C., 486 F.3d 325, 330 (8th Cir. 2007).  "In considering a motion for summary judgment the court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue."  Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008) (citation omitted).  Instead, "we

---

[2]Fed. R. Civ. P. 54(d) was amended on April 30, 2007, effective December 1, 2007, after the June 19, 2007 filing date of UCL's motion seeking attorney fees.  We apply the language of the rule in effect at the time of the proceeding in the district court.

[3]The 2007 amendment of the Federal Rules of Civil Procedure effectively renumbered and modified the language of Rule 43.  Fed. R. Civ. P. 43(e) is now found at Fed. R. Civ. P. 43(c).  We apply the language of the rule in effect at the time of the proceeding in the district court.

focus on whether a genuine issue of material fact exists for trial—an issue of material fact is genuine if the evidence is sufficient to allow a reasonable jury verdict for the nonmoving party." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

### A. Prepayment Premium Provision (PPP)
#### 1. Waiver or Modification

GPR asserts sufficient evidence supported a finding UCL waived or modified the PPP, precluding summary judgment, because "[t]he issue of waiver is generally one of fact for the jury, in particular where acts and conduct are relied upon as the basis for the waiver." (quoting Scheetz v. IMT Ins. Co., 324 N.W.2d 302, 304 (Iowa 1982) (en banc) (citing Continental Casualty Co. v. G.R. Kinney Co., Iowa, 140 N.W.2d 129, 130 (Iowa 1966))).[4] Waiver is defined as "'the voluntary or intentional relinquishment of a known right.'" Scheetz, 324 N.W.2d at 304 (quoting Travelers Indemnity Co. v. Fields, 317 N.W.2d 176, 186 (Iowa 1982)). "The essential elements of a waiver are the existence of a right, knowledge, actual or constructive, and an intention to relinquish such right." Id. (citing Perkins v. City National Bank of Clinton, 114 N.W.2d 45, 52 (1962)). Jackson, GPR's President and CEO, admits the only time waiver of the PPP was ever discussed was in his July 1, 1997 letter to UCL. UCL and GPR never negotiated specifically regarding waiver of the PPP. The PPP was not mentioned in UCL's refinancing offer, was not specified by GPR in its counteroffer, and was not addressed in the ultimate written agreement between GPR and UCL—a written agreement explicitly providing, "Except as expressly modified herein, all of the terms of the Note, the Mortgage and the other Loan Documents remain in full force and effect."

---

[4]The Note and Mortgage select Iowa law for application to the parties' agreement.

Where UCL never voluntarily or intentionally relinquished its right to the PPP, no reasonable jury could find UCL waived the PPP. Where UCL never entered discussions regarding modification of the PPP, no reasonable jury could find the PPP was modified either by oral[5] or written agreement.

## 2.    PPP Enforceability Under Iowa Law

GPR next asserts the PPP is unenforceable under Iowa law because the PPP constitutes an unreasonable liquidated damages provision. The Iowa legislature has imposed restrictions on prepayment charges for agricultural land and certain family residences. The legislature has remained silent as to commercial real estate transactions. The district court noted Iowa follows the common law "perfect tender in time" rule, holding a borrower has no right to pay off a mortgage before the maturity date, absent a loan agreement provision allowing prepayment. See Lett v. Grummer, 300 N.W.2d 147, 150 (Iowa 1981). The Note provided GPR the right to prepay, but only if payment was tendered in full, accompanied by the PPP payment. The district court found the PPP's terms to be unambiguous and noted when commercial entities, represented by counsel, agree to contractual terms, Iowa courts will ordinarily enforce the terms. We agree.

### a.    PPP Not a Liquidated Damages Provision

Under Iowa law, liquidated damages are a remedy for breach of contract. See Am. Soil Processing, Inc. v. Iowa Underground Storage Tank Fund Bd., 586 N.W.2d 325, 334 (Iowa 1998). Where a party retains control over the manner of performance, "alternatives are not damages provisions but rather performance alternatives." Id.

---

[5]See Passehl Estate v. Passehl, 712 N.W.2d 408, 417 (Iowa 2006) ("A written contract may be modified by a subsequent oral contract that has the essential elements of a binding contract. . . . However, proof of a claimed oral contract must come from more than loose and random conversations." (internal citations and quotation marks omitted)). The record does not support even loose and random conversations by UCL to waive the PPP.

(citing <u>Superfos Inv. Ltd. v. FirstMiss Fertilizer, Inc.</u>, 821 F.Supp. 432, 434 (S.D. Miss. 1993)). Here, the Note gave GPR the choice of paying according to the Note's terms or prepaying the Note in full and paying the PPP. When GPR elected to prepay, GPR was not breaching the contract but was in fact acting in accordance with an express option provided under the contract. The district court was correct in determining the PPP was not a liquidated damages provision.

### b. Payment Was Not Unreasonable

A liquidated damages charge is enforceable under Iowa law if it is "reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." <u>Rohlin Constr. Co. v. Hinton</u>, 476 N.W.2d 78, 80 (Iowa 1991) (quoting Restatement (Second) of Contracts, § 356(1) (1981)). The reasonableness of a liquidated damages provision is assessed as of the time the agreement is made, <u>id.</u>, and is a question of law for the court. <u>City of Davenport v. Shewry Corp.</u>, 674 N.W.2d 79, 85 (Iowa 2004). While at least one court has held as unreasonable a fixed prepayment penalty, the court did so because the penalty presumed that a loss would occur, regardless of whether interest rates rose or fell. <u>See</u> <u>In re A.J. Lane & Co.</u>, 113 B.R. 821, 829 (Bkr. D. Mass. 1990). The <u>Lane</u> court suggested that "[a]ny prepayment charge should be wholly or largely dependant upon" . . . "the difference in the interest yield between the contract rate and the market rate at the time of prepayment, projected over the term of the loan and then discounted to arrive at present value." <u>Id.</u> The PPP did what the <u>Lane</u> court suggested, because the PPP did not presume a loss and was calculated based upon prevailing market rates in an attempt to calculate UCL's actual loss of earnings resulting from GPR's prepayment. The formula used and the resulting PPP charge were reasonable at the time the agreement was reached. Even if the PPP were treated as a liquidated damages provision, the PPP is enforceable because it constituted a reasonable assessment of the actual or anticipated loss caused by the breach.

**B.      Attorney Fees**

A district court's award of attorney fees is reviewed for an abuse of discretion. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).  UCL moved for an award of attorney fees pursuant to Fed. R. Civ. P. 54(d) based upon the terms of the Note and Mortgage.  GPR asserts that UCL is not entitled to recover attorney fees because, at the time the lawsuit was filed and attorney fees sought, UCL was no longer the "Holder" of the Note or a "Mortgagee" under the Mortgage and the attorney fees provisions in both the Note and the Mortgage reference fees incurred by a "Holder" or "Mortgagee."

Both the Note and the Mortgage reference that fees can be recovered by the Mortgagee or Holder "arising out of or in connection with any action, proceeding or hearing."  Both parties clearly recognized that, at the time the contract was executed, UCL was the "Holder." Upon a breach involving prepayment, UCL would technically cease to be the "Holder."  Nonetheless, UCL  was the envisioned "Holder," and the attorney fees incurred arose from GPR's lawsuit challenging the PPP provision of the Note.  The fact the lawsuit was not brought until after the Note was satisfied and the Mortgage released does not change the facts (1) the attorney fees incurred arose or were in conjunction with the Note or Mortgage, and (2) the breach occurred when UCL was "Holder."  If we were to follow GPR's hyper-technical reading, it would effectively render the attorney fees provision meaningless and trigger an impractical and arguably absurd result.  The district court did not err in awarding attorney fees under the terms of the Note and Mortgage.  See United States v. Barnett, 415 F.3d 690, 692 (7th Cir. 2005) ("A contract will not be interpreted literally if doing so would produce absurd results, in the sense of results that the parties, presumed to be rational persons pursuing rational ends, are very unlikely to have agreed to seek." (citations and alteration omitted)).

On the eighth page of GPR's nine page response in opposition to UCL's request for attorney fees, and not in a separately filed motion, GPR alternatively requested

"leave pursuant to Fed. R. Civ. P. 54(d)(2)(C) to conduct discovery . . . and an opportunity for adversary submissions pursuant to Fed. R. Civ. P. 43(e)." GPR asserts the district court erred in not granting GPR the opportunity to conduct discovery or to submit adversary submissions in regard to UCL's request for attorney fees.

Rule 54(d)(2)(C), at the time, provided, "On request of a party or class member, the court shall afford an opportunity for adversary submissions with respect to the *motion* in accordance with Rule 43(e) . . . ." (emphasis added). Rule 43(e) then stated, "When a *motion* is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition." (emphasis added).

It is questionable whether a single sentence appearing only on the eighth page of a nine page response qualifies as a "request of a party" under Rule 54(d)(2)(C) or a "motion" under Rule 43(e). More directly, the district court's local rules specifically provide "a resistance to a motion may not include a separate motion or cross motion by the responding party." Local Rule 7.1.e (now Local Rule 7.e). Where GPR is barred by local rule from making its motion within the body of its response, GPR has failed to properly make a Rule 54(d)(2)(C) motion.[6]

_____

[6]Even if we were to consider a motion, it appears the district court could properly deny the motion. While the previous language of Rule 54(d)(2)(C) mandates an opportunity to conduct discovery, the mandate is couched in reference to the former Rule 43(e). Rule 43(e) specifically pertained to motions "based on facts not appearing of record." In this case, the facts were of record because the basis for determining whether or not UCL was entitled to an award of fees was in the Note and Mortgage which both specifically allowed for UCL to recover costs or fees incurred. Thus, Rule 54(d)(2)(C)'s mandate does not apply to the situation here because the facts surrounding whether or not to award UCL attorney fees and costs were "of record."

GPR did challenge UCL's entitlement to attorney fees and expenses, but never challenged the appropriateness of the amount claimed. UCL supported its request for fees with substantial evidence including time sheets and affidavits from other attorneys attesting to the reasonableness of the hourly fees charged. With no contradictory evidence from GPR, the district court did not abuse its discretion in awarding fees and costs to UCL.

## III.  CONCLUSION

For the reasons stated, we affirm.

_____