# IN THE COURT OF APPEALS OF IOWA

No. 24-0617
Filed July 2, 2025

**KIMBERLY SUE PITTMAN,**
    Plaintiff-Appellee,

**vs.**

**BRENDA H. HAMANN,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary, Judge.

A party to a real estate contract appeals, claiming there was no right to prepayment. **REVERSED AND REMANDED.**

John C. Gray and Diane Murphy Smith of Heidman Law Firm, L.L.P., Sioux City, for appellant.

Jackson Dziedzic of Goosmann Law Firm, Sioux City, for appellee.

Considered without oral argument by Greer, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Brenda Hamann appeals the district court order allowing Kimberly Pittman to prepay on a real estate contract. Finding the contract did not imply Pittman had a right to prepay the real estate contract and the perfect-tender-in-time rule applied, we reverse and remand.

## I.    Background Facts and Proceedings

In 2015, Pittman entered a real estate contract with Mike Salmen L.L.C. (Salmen) to purchase a house for $67,000. The mortgage was calculated for a twenty-year period, using the contracted interest rate of 8.9346%. Salmen used the Iowa State Bar Association's short-form real estate contract, attaching ten addendum paragraphs to the contract.

Pittman's mother, Barbara Christ, lived in the house. Christ paid the mortgage directly to Salmen, sometimes with financial help from her other daughter, Hamann. At one point, Hamann asked Pittman if Hamann could buy out the contract and rent it to their mother. After their mother died in early April 2023, Hamann planned for the house to be in both sisters' names, that their brother would fix it up, and they would then sell the house and split the profits among the siblings. Their brother had been living with Christ as her caretaker, and at one point Pittman planned to sign the house over to him; but she ultimately evicted him after Christ's death. Pittman told Salmen she "was going to go to the bank and refinance and get a mortgage for the home." In May, Pittman's bank approved the loan pending a "total amortized amount due and the abstract."

On May 5, 2023, Salmen agreed to sell the contract and deed for the house to Hamann for $55,000. On May 9, Hamann served a notice of forfeiture of real

estate contract on Pittman noting a missed payment and a number of house conditions; Pittman paid the overdue payment shortly after. Just over a week later, on May 16, Pittman's attorney emailed Salmen asking "to pay the entire balance due." Two days later, Salmen signed the warranty deed over to Hamann. Hamann did not provide a payoff amount, a copy of the abstract, or have a warranty deed prepared for Pittman; her attorney informed Pittman's attorney that, "[a]bsent compelling authority otherwise, . . . Hamann will NOT accept early prepayment on the Contract." On June 1, Salmen and Hamann signed the loan assignment agreement. Pittman's loan did not close.

The parties' arguments primarily contest the meaning of two provisions from an addendum to the contract:

> **21. Due on Sale.** If all or any part of the premises or an interest therein is sold, Transferred, Conveyer, or assigned by Buyers without Sellers prior written consent, Sellers may, at Sellers option, declare all the sums to be immediately due and payable. If such sale, transfer, conveyance, or assignment occurs during the FIRST FIVE YEARS of this contract, Buyers shall be subject to prepayment penalty described in paragraph 28.
> . . . .
> **28. Prepayments.** The amortized schedule of payments pursuant to paragraph 1 provides for the payment of interest as follows during the first three [sic] years of this contract.
> | | |
> |---|---|
> | Payments 7/01/15 through 12/31/15 | $2,981.00 |
> | Payments 1/01/16 through 12/31/16 | $5878.00 |
> | Payments 1/01/17 through 12/31/17 | $5754.00 |
> | Payments 1/01/18 through 12/31/18 | $5620.00 |
> | Payments 1/01/19 through 12/31/19 | $5473.00 |
> | Total | $25,706.00 |

Pittman agreed she "never sold, transferred, conveyed, or assigned [her] interest" in the contract. And she agreed "there's no specific language in the contract that allows prepayment." But she understood, based on her discussions

with Salmen, that the above provisions—and paragraph 28 specifically—allowed for prepayment on the contract even absent a transfer.

An abstract specialist testified at trial, affirming both that the contract did not prohibit prepayment and did not compel acceptance of prepayment. Real estate professionals testified to the same point: the contract did not prohibit nor compel acceptance of prepayment.

Hamann urged the court to apply the common law "perfect tender in time" rule, find paragraph 21 would only apply if Pittman sold or transferred the property, and confine its interpretation to the four corners of the contract. And she testified she bought the deed to make money on the interest payments.

At the bench trial, the district court noted paragraph 21 "seems internally inconsistent" and observed the contract "wasn't drafted very carefully." The district court ruled the contract's end-date to the prepayment penalty implied a right to prepay the contract. The court ordered Hamann to convey the property to Pittman "[u]pon tender of the contract balance consistent with the amortization schedule."

## II. Standard of Review

"The court's review of a declaratory judgment action depends upon how the action was tried to the district court." *Van Sloun v. Agans Bros.*, 778 N.W.2d 174, 178 (Iowa 2010). The parties here agree the case was tried at law, and actions on contract are generally treated as at law. *See id.* So we review for errors at law. *Id.* at 179. The court's fact-findings "have the effect of a special verdict" and bind us if supported by substantial evidence, but we are not bound by the court's legal conclusions. Iowa R. App. P. 6.907; *see Van Sloun*, 778 N.W.2d at 179.

### III. Discussion

"Iowa follows the common law 'perfect tender in time' rule, holding a borrower has no right to pay off a mortgage before the maturity date, absent a loan agreement provision allowing prepayment." *Great Plains Real Est. Dev., L.L.C. v. Union Cent. Life Ins.*, 536 F.3d 939, 944–45 (8th Cir. 2008). In other words, "the law in Iowa . . . presumes no right to prepayment." *Hoffman v. Kounkel*, No. 15-1363, 2016 WL 4051885, at *4 (Iowa Ct. App. July 27, 2016). And a seller "cannot be compelled to take the money until it is due." *Lett v. Grummer*, 300 N.W.2d 147, 150 (Iowa 1981).

This general rule can be and has been limited by statute—for example, real estate loans from a credit union "may be repaid in part or in full at any time." Iowa Code § 533.315(11) (2023). And the General Assembly has limited prepayment penalties for loans on owner-occupied dwellings. *Id.* § 535.9. But the parties cite no statute providing a right to prepay under this real estate contract.

The *Hoffman* panel observed a Restatement recognized a right to prepay the mortgage unless a contract provision eliminates that right, but the Restatement's comments also note that traditional common law principles denied such a right and followed the perfect-tender-in-time rule. *See* 2016 WL 4051885, at *4 n.5; Restatement (Third) of Property: Mortgages § 6.1 (1996). That Restatement section has not been adopted by our supreme court, and we are bound by existing law. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

"Generally, when we interpret contracts, we look to the language contained within the four corners of the document." *DuTrac Cmty. Credit Union v. Radiology*

*Grp. Real Est., L.C.*, 891 N.W.2d 210, 216 (Iowa 2017). But the real estate contract here neither expressly permits nor expressly forbids prepayment by the buyer, and this was recognized by several real estate professionals at trial. So we default to the perfect-tender-in-time rule—i.e. "a borrower has no right to pay off a mortgage before the maturity date[] absent a loan agreement provision allowing prepayment"—unless Pittman has shown paragraph 28 impliedly provides an independent right to prepay the real estate contract or if it is a dependent clause that only applies in the event paragraph 21 is triggered by a sale or transfer by the buyer. *See Great Plains*, 536 F.3d at 944–45.

Reading the plain language of the contract provisions, we do not find an implied right to prepay. Paragraph 21 provides the seller the right to demand payment in full upon transfer or sale of the property without prior permission, including a specified penalty if transferred or sold within the first five years. And both sentences of the provision are conditioned on the buyers selling, transferring, conveying, or assigning their interests. This paragraph provides the buyers no additional rights; it does not even give the buyers the right to prepay upon the transfer or sale—it gives the seller the right under specific circumstances to demand payment of "all the sums."

Paragraph 28 provides even less basis for a right of prepayment to the buyer. Aside from the paragraph's heading "Prepayments," nothing in the paragraph addresses prepayment. Instead, it simply provides a summary of the interest due each year, according to the amortized schedule during the years paragraph 21 could trigger a penalty.

The district court interpreted paragraph 21 as providing "a right to prepay the contract after the first five years have passed without penalty." We disagree. Paragraph 21 is a conditional right: *if* the seller demands prepayment upon the buyer's transfer without written permission, *then* the buyer has a right to do so without penalty. Essentially, after five years the buyer has the right to transfer or sell the property without penalty, not a right to prepay.

The district court relied in part on *Hoffman*. But the contract language in this case differs from what this court construed there. The provision there read: "It is further agreed between the parties hereto that Buyer shall make no prepayment of principal balances owing hereunder prior to September 2, 2012 without Sellers' written permission." 2016 WL 4051885, at *1. And a panel of this court found that provision "at a minimum, implied a right to prepayment thereafter." *Id.* at *7. In contrast, the contract here does not have a similar provision. Instead, paragraph 21 here resembled a separate provision which the *Hoffman* court determined "can easily be read to provide the [sellers] . . . the ability to demand, at certain designated times, full payment prior to the complete duration of the thirty-year contract." *Id.* at *5.

Pittman argues, "It is an industry standard that real estate contracts are prepaid." And it may be common for lenders and sellers to permit prepayment. But none of the evidence Pittman offered establishes a standard where prepayment rights are guaranteed absent a contract provision. And even if she had, our review is at law, not equity. We are bound by the black-letter law and the language of this contract.

After reviewing the plain language of the contract, we find it does not grant Pittman an implied right to prepay the real estate loan. Hamann may choose to accept prepayment but cannot be compelled to do so. We conclude the district court erred at law in interpreting the contract to contain an implied right to prepay and in compelling Hamann to convey the property immediately. Because we find relief for Hamann on her first claim, and acknowledging error preservation concerns raised by Pittman, we do not reach her remaining claims. We reverse the district court's declaratory judgment and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**